UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GREGORY VALDEZ, | ) Case No.: 1:19-cv-0121 - JLT |
| Plaintiff, | ) ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF MICHAEL GREGORY VALDEZ |
| v. | |
| ANDREW M. SAUL[1], Commissioner of Social Security, | |
| Defendant. | |

Michael Gregory Valdez asserts he is entitled to a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating Plaintiff's statements regarding the severity of his symptoms and seeks judicial review of the decision denying his applications for benefits. For the reasons set forth below, the administrative decision is **AFFIRMED**.

## **BACKGROUND**

In April 2015, Plaintiff filed applications for benefits, alleging disability beginning on September 20, 2012. (Doc. 10-3 at 18) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 10-4) Plaintiff requested a hearing and testified before an ALJ on November 29, 2017. (*See* Doc. 10-3 at 18, 33) The ALJ determined

---

[1] This action was originally brought against Nancy A. Berryhill in her capacity as then-Acting Commissioner. (*See* Doc. 1) Andrew M. Saul, who is now the Commissioner, has been automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

1

Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on February 2, 2018. (*Id.* at 18-26) Plaintiff filed a request for review of the decision with the Appeals Council, which denied his request on November 26, 2018. (*Id.* at 2-5) Thus, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 20, 2012. (Doc. 10-3 at 20) Second, the ALJ found Plaintiff's severe impairments included: "status post right total hip arthroplasty," peripheral neuropathy, and obesity. (*Id.*) The ALJ noted Plaintiff also reported a history of acute myelocytic leukemia, but found it was not a severe impairment because it was in remission and "no additional medical intervention [was] anticipated." (*Id.* at 21) In addition, the ALJ found Plaintiff's hypertension and hypercholesterolemia were not severe impairments because they were controlled by medication "and significant symptoms, limitations, medications, [and] side effects … [were] not apparent in the record." (*Id.*)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 10-3 at 21) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 hours in an 8 hour day, and sit for 6 hours in an 8hour day. The claimant can frequently climb ramps and stairs, occasionally climb ladders and scaffolds, and frequently stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme temperatures, vibration, fumes, odors, dusts, gases, and workplace hazard.

(*Id.*) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "capable of performing past relevant work as a Warehouse Clerk." (*Id.* at 25) Therefore, the ALJ

concluded Plaintiff was not disabled as defined by the Social Security Act from September 20, 2012, through the date of the decision. (*Id.* at 26)

# **DISCUSSION AND ANALYSIS**

Plaintiff argues that "the ALJ failed to articulate specific, clear and convincing reasons in rejecting [her] subjective symptom testimony." (Doc. 16 at 5, emphasis omitted) On the other hand, the Commissioner asserts, "substantial evidence supports the ALJ's consideration of Plaintiff's subjective testimony." (Doc. 19 at 4, emphasis omitted)

## A. **Plaintiff's Testimony before the ALJ**

Plaintiff stated he last worked as a warehouseman for Macy's Distribution Center in the City of Industry. (Doc. 10-3 at 38) The position involved shipping, receiving, loading, and unloading trucks. (*Id.*) He stated he worked "as a safety coordinator as well for about a year." (*Id.*) In that role, he had "daily meetings in the morning with [his] crew" about safety procedures. (*Id.*) Plaintiff said he stopped working for about eight months in 2005 when he had leukemia, but he did not resign until 2012 due to pain in his right hip. (*Id.* at 38-39)

Plaintiff said he underwent chemotherapy for his leukemia, and doctors told him that was why he needed the hip replacement surgery. (Doc. 10-3 at 44) He said he also had neuropathy from the chemotherapy, which caused his toes to go numb. (*Id.*)

He reported that he had pain in his right hip every day, which "comes and goes." (Doc. 10-3 at 40) Plaintiff said his hip hurt "a lot when … the weather is cold out." (*Id.*) He stated he could not "really walk on it too much because … [his] right hip gets numb." (*Id.*) Plaintiff said he tried to keep busy and "just do little chores here and there" to make himself feel better. (*Id.*) He reported the chores he performed included sweeping and making the beds for his kids. (*Id.*) He explained he had problems walking outside to take out the trash. (*Id.*)

Plaintiff testified he had been using a cane for the past six months, and he used it "all the time." (Doc. 10-3 at 41) He stated he also had difficulty with sitting, and his toes would get numb if he sat too long, so he would "have to elevate [his] right hip." (*Id.*) He estimated he could sit for about 20 minutes before he needed to "get up and get [the] blood circulating in [his] toes." (*Id.* at 45) In addition, he estimated that he elevated his leg for about an hour each day "just to keep [his] blood

flowing in [his] leg," and said it was something the doctor suggested. (*Id.* at 49)

Plaintiff said he would "kind of just stay home and rest" on a typical day. (Doc. 10-3 at 41) He estimated that he spent "a couple hours" lying down each day, "towards the afternoon." (*Id.* at 48) Plaintiff reported he had a chair in the bathtub, but sometimes his wife would bathe him. (*Id.* at 42) He stated he did not go out for grocery shopping, personal shopping, or travel to see family and friends. (*Id.* at 42-43) He testified that tiredness and weakness were residual symptoms from his leukemia. (*Id.* at 45)

Plaintiff said he also had high blood pressure and cholesterol for which he took medication. (Doc. 10-3 at 40) He reported the medication helped control his symptoms, and he never had any heart problems. (*Id.*) He said he was "in pain like maybe four days out of the week, like every day" and he took Tramadol about every four hours for pain. (*Id.* at 45)

**B.     Standards for Reviewing a Claimant's Statements**

When evaluating a claimant's statements, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ must identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the

5

adjudicator evaluated the individual's symptoms." Social Security Ruling[2] 16-3p, 2017 WL 5180304 (2017).

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

**C.  Analysis of Plaintiff's Statements**

The ALJ determined first that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," including hip pain and neuropathy. (Doc. 10-3 at 22) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record...." (*Id.*) The ALJ indicated Plaintiff's statements were inconsistent with the record "because the positive clinical and diagnostic findings in the objective record, coupled with the claimant's reliance on routine and conservative treatment, demonstrate the claimant's increased capacity to function in contravention to his allegations." (*Id.*) In particular, the ALJ stated:

> [T]he claimant's subjective complaints are not supported by the objective medical evidence. At the hearing the claimant's primary complaint was his hip pain, not his peripheral neuropathy (Hearing Testimony). That said, he still alleged that he was in pain most of the time, experienced fatigue and weakness, lied down during the day, and elevated his leg. He also reported occasional reliance on an assistive device for walking. These allegations are not supported by the information reflected in his treatment and examination records. For one, there is no appreciable evidence that he has been prescribed an assistive device, yet there is evidence that one has been deemed unnecessary (*see* Exhibit 1F). For another, there are no appreciable reports of fatigue or weakness, specific complaints of neuropathic pain, or physician-advised modalities of elevation or anything specific for his leg or neuropathy (*see* Exhibits 2F-6F). Some medical notes do indicate that he had pain and tingling in his feet and that his physicians[] assessed his symptoms as diagnosable peripheral neuropathy,

---

[2] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

6

itself due to his chemotherapy (*see* Exhibit 3F, p. 12). But they did not consider the condition disabling. Rather, after assessing the condition in November 2013, the claimant's physician noted that the claimant's peripheral neuropathy would be followed conservatively (Exhibit 3F p. 8). And as reflected in medical notes from November 3, 2014, the claimant's physicians considered the condition "mild" (Exhibits 4F p. 23). This is consistent with the examination findings, which faithfully revealed normal neurological musculoskeletal and even peripheral vascular functioning (*see e.g.* Exhibits 3F, p. 4; 4F, pp. 3-4, 12-13, 24-25, 33, 36; 5F, pp. 3, 6, 10). This has remained unchanged throughout the five-years of medical records in the case file (*see* Exhibit 6F, pp. 7, 14, 21, 38, 44, 52, 65, 77).

Moreover, objective diagnostic findings are inconsistent with the alleged severity and limiting effects of his pain reports. Despite his allegations of a malfunctioning hip prosthesis, hip x-rays conducted in October 2013 revealed that the prosthesis was installed correctly and remained "in good position and alignment", with no signs of unusual lucencies, prosthesis bone interface, joint space narrowing, fractures, or dislocation (Exhibit 3F, p. 25). August 2016 hip x-rays again showed good alignment of his prosthesis and otherwise unremarkable results (Exhibit 6F, p. 106). More recently, in June 2017, x-rays of the claimant's right hip showed that the hip was status-post right total hip arthroplasty, and again reflected "no evidence of component loosening or significant abnormality" (Exhibit 6F, p. 105). And contemporaneous inflammatory mediator marker panel testing has consistently yielded negative results (*see* Exhibit 6F, pp. 73, 76, 79).

Physical examinations, while consistent with his surgical record and complaints of pain, were at the same time consistent with the normal diagnostic findings discussed above, revealing postoperative pain levels that were addressed through routine use of Norco painkillers at incrementally, and marginally, increased dosages, and other routine treatments such as physical therapy (Exhibits 4F, p. 9; 6F, pp. 78, 108). Given the normal examination [findings] and unremarkable results from diagnostic imaging the claimant was referred back to his orthopedic surgeon, Rama Pathi, M.D., for further evaluation of his postoperative hip pain (Exhibit 4F, p. 9). In February 2015, the claimant presented to Dr. Pathi, complaining of hip pain that was aggravated by any movement and relieved by rest ice elevation and medication (Exhibit 6F, p. 108). On examination, Dr. Pathi observed the claimant's right hip was capable of performing all normal ranges of motion, and exhibited no crepitus, instability, subluxation or laxity, and no fracture or dislocation (*ibid.*). As such Dr. Pathi recommended no further intervention (*ibid.*).

(Doc. 10-3 at 23-24)

Plaintiff contends the ALJ erred in this analysis, particularly in finding his statements were not "reflected in his treatment and examination records." (Doc. 16 at 8) In addition, Plaintiff asserts that "aside from a discussion of the medical evidence, in some for or another, not a single alternative reason is offered from discounting [Plaintiff's] testimony and reported limitations." (*Id.*) Thus, Plaintiff argues the ALJ's analysis was "insufficient as a matter of law." (*Id.*)

1. Conservative treatment

Plaintiff fails to acknowledge the ALJ's findings that Plaintiff received conservative treatment

7

as part of the analysis of his subjective statements. (*See generally* Doc. 16 at 8-10) When evaluating a claimant's statements, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c). The treatment a claimant received, especially when conservative, is a legitimate consideration in a credibility finding. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged).

The ALJ found Plaintiff relied "on routine and conservative treatment" in the period adjudicated. (Doc. 10-3 at 23) Specifically, the ALJ noted Plaintiff's physician indicated Plaintiff's "peripheral neuropathy would be 'followed conservatively.'" (*Id.*, citing Exh. 3F, p. 8 [Doc. 10-8 at 27]) In addition, the ALJ found Plaintiff's hip pain was treated through "routine use" of pain medication "and other routine treatments such as physical therapy." (*Id.*, citing Exh. 4F, p. 9 [Doc. 10-8 at 53; Exh. 6F, pp. 78, 108 [Doc. 10-10 at 79; Doc. 10-11 at 18])

Because Plaintiff did not challenge the ALJ's findings regarding the conservative treatment, any challenge to this reason for rejecting Plaintiff's subjective statements has been waived. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (where a claimant failed to raise an argument in the opening brief, the Court deemed it waived); *Zango v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived"); *Pendley v. Colvin*, 2016 U.S. Dist. LEXIS 53470 at *22-23 (Dist. Or. Mar. 2, 2016) (noting the plaintiff "challenge[d] some, but not all, of the reasons provided by the ALJ" and finding "any argument against those-non challenged reasons [was] deemed waived"). Consequently, the findings related to Plaintiff's conservative treatment support the ALJ's conclusion that Plaintiff's statements regarding the severity of his symptoms were inconsistent with the treatment.

2. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.

1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor evaluating his subjective complaints.

If an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

The ALJ found the record did not support Plaintiff's testimony related to the severity of his pain, peripheral neuropathy, and reliance upon a cane. (Doc. 10-3 at 23) The ALJ observed that examinations "faithfully revealed normal neurological, musculoskeletal, and even peripheral vascular functioning." (*Id.*, citing Exh. 3F, p. 4 [Doc. 10-8 at 23]; Exh. 4F, pp. 3-4, 12-13, 24-25, 33, 36 [Doc. 10-8 at 47-48, 56-57, 68-69, 77, 80]; Exh. 5F, pp. 3, 6, 10 [Doc. 10-9 at 4, 7, 11]) In addition, the ALJ found Plaintiff's "allegations of a malfunctioning hip prosthesis, hip x-rays conducted in October 2013 revealed that the prosthesis was installed correctly," and in August 2016, imaging "again showed good alignment … and otherwise unremarkable results." (*Id.*, citing Exh. 3F, p. 25; Exh. 6F, p. 106 [Doc. 10-8 at 44; Doc. 10-11 at 16]) Further, the ALJ noted imaging in June 2017 did not show any "evidence of component loosening or significant abnormality." (*Id.*) The ALJ also noted Plaintiff had "normal ranges of motion, and exhibited no crepitus, instability, subluxation or laxity, and no fracture or dislocation" upon examination. (*Id.* at 24, citing Exh. 6F, p. 108 [Doc. 10-11 at 18])

Plaintiff contends the ALJ's analysis is not supported by the record related to Plaintiff's

complaints of "fatigue, weakness, needing to lie down, leg elevation, and reliance on an assistive device." (Doc. 16 at 8) Plaintiff observes:

> For instance, Valdez reported to Dr. Pathl that he elevates his leg in order to relieve pain. (A.R. 474). Chart notes repeated describe the symptoms associated with neuropathy as "moderately severe" as well as moderately severe with respect to the left hip. (See e.g., A.R. 381, 384, 390. 392, 397, 402, and 409). The use of a cane is also documented in the chart notes. (A.R. 273).

(*Id.* at 8) Thus, Plaintiff asserts the ALJ's summary was "not accurate" and "is not supported by substantial evidence." (*Id.*)

The records identified by Plaintiff do not contradict the ALJ's findings. Indeed, Plaintiff acknowledges the medical records indicate he *reported* to a physician he was elevating his leg, not that the physician told Plaintiff to do so, or that the physician believed it was necessary on a daily a basis. (*See* Doc. 16 at 8; Doc. 10-11 at 108) Similarly, though the record indicates Plaintiff used a cane, Plaintiff fails to identify any records in which a physician *prescribed* a cane for his use or otherwise directed it. (*See* Doc. 10-8 at 25) Finally, while Plaintiff identifies records in which the physician described Plaintiff's neuropathy as "moderately severe," these records do not contradict the ALJ's statement that "in medical notes from November 3, 2014, the claimant's physicians considered the condition 'mild.'" (Doc. 10-3 at 24, citing Exh. 4F, p. 23 [Doc. 10-8 at 67]) Many records indicate the physician described the severity as "mild," similar to the finding from November 2014. (*See, e.g.*, Doc. 10-8 at 67, 69, 72, 73, 75-76, 81) Thus, Plaintiff fails to identify records that contradict the ALJ's determination or demonstrate that the ALJ's analysis is not supported by substantial evidence.

Moreover, the ALJ met his burden to identify specific clinical findings and observations that were inconsistent with Plaintiff's testimony concerning the severity of his impairments, including: unremarkable imaging; normal neurological, musculoskeletal, and peripheral vascular functioning; "normal ranges of motion" upon examination; and lack of instability. (*See* Doc. 10-3 at 23-24) Thus, the objective medical record supports the adverse credibility determination.

## **CONCLUSION AND ORDER**

The ALJ properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958. Because the ALJ applied the proper legal

standards, the administrative decision will be upheld. *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Michael Valdez.

IT IS SO ORDERED.

Dated: **April 13, 2020**             **/s/ Jennifer L. Thurston**
                                       UNITED STATES MAGISTRATE JUDGE